IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THOMAS FUENTES,<br><br>    Plaintiff,<br><br>v.<br><br>MB RAILWAY SERVICES, LLC and UNION PACIFIC RAILROAD COMPANY,<br><br>    Defendants. | 8:20CV190<br><br>MEMORANDUM<br>AND ORDER |

  This matter is before the Court on two motions in limine (Filing Nos. 85 and 89) filed by defendant MB Railway Services, LLC ("MB Railway") and one motion in limine (Filing No. 88) filed by defendant Union Pacific Railroad Company ("UP" and collectively, "defendants"). Plaintiff Thomas Fuentes ("Fuentes") opposes (Filing Nos. 111 and 113) all three motions. For the reasons stated below, the defendants' motions in limine are granted in part and denied in part.

**I. BACKGROUND**

  On October 4, 2018, Fuentes severely injured his left leg and hip when the locomotive he was operating for UP in a railyard in North Platte, Nebraska, collided with a fuel truck owned and operated by MB Railway. Fuentes was riding point on the ladder of a railcar attached to the locomotive when the side mirror of the moving fuel truck struck his leg and knocked him to the ground. Fuentes was taken by ambulance to a local hospital before being transferred by helicopter to a hospital in Denver, Colorado, due to the severity of his injuries. Over the next year, Fuentes underwent multiple surgeries, culminating in a full hip replacement.

  On May 20, 2020, Fuentes sued UP and MB Railway for negligence seeking more than $2,000,000 in general and special damages. In addition to past and future medical bills, he seeks damages for "past and future physical and mental pain and anguish" and

"past and future permanent injury, impairment, disability, loss of earnings and loss of earning capacity" that he alleges he has suffered as a result of his injuries. To help prove his damages, Fuentes has hired a team of experts, including Steven Sands, D.O. ("Dr. Sands"), Shelly Kinney ("Kinney"), Ronald Schmidt ("Schmidt"), Jeffrey Opp ("Opp"), and Amanda Snide ("Snide").

UP and MB Railway seek to disqualify some of those witnesses and exclude some of their proposed opinions under Federal Rules of Civil Procedure 26 and 37; Federal Rules of Evidence 701, 702, and 703; and the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). None of the parties have requested a hearing, and the Court finds a hearing is not required here. *See United States v. Aungie*, 4 F.4th 638, 645 (8th Cir. 2021) (explaining "the trial court is not always required to hold a *Daubert* hearing before qualifying an expert witness" or admitting expert testimony).

## II. DISCUSSION

### A. Legal Standard

"As the proponent of the expert testimony in question," Fuentes has "the burden to prove its admissibility by a preponderance of the evidence." *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 776 (8th Cir. 2021); *see also* Fed. R. Evid. 104(a); *Daubert*, 509 U.S. at 592 n.10. "Trial judges are tasked with a gatekeeping role to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Shipp v. Murphy*, 9 F.4th 694, 700 (8th Cir. 2021) (alteration in original) (quoting *Daubert*, 509 U.S. at 597). In performing that role, the Court must be careful not to "invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003).

The admissibility of expert testimony in federal court is primarily governed by Federal Rules of Evidence 702 and 703. *See Daubert*, 509 U.S. at 592-94. Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"The inquiry envisioned by Rule 702 is . . . a flexible one. Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 829 (8th Cir. 2019) (quoting *Daubert*, 509 U.S. at 594-95)). "A district court has great latitude in determining whether expert testimony meets the reliability requisites of Rule 702." *Aungie*, 4 F.4th at 645 (quoting *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019)).

"Rule 702 favors admissibility if the testimony will assist the trier of fact." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998). Any "doubts regarding 'whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" *Id.* (quoting *Larabee v. MM & L Int'l Corp.*, 896 F.2d 1112, 1116 n.6 (8th Cir. 1990)). "Any weaknesses in the factual underpinnings of [an expert's] opinion go to the weight and credibility of his testimony, not to its admissibility." *Hurst v. United States*, 882 F.2d 306, 311 (8th Cir. 1989). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996)). "The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony." *United States v. McDaniel*, 925 F.3d 381, 385 (8th Cir. 2019) (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)).

Rule 703 permits an expert to "rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field." *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997). If such facts and data are otherwise inadmissible, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

### B. Dr. Steven Sands

Dr. Sands is Fuentes's orthopedic surgeon. He performed Fuentes's hip surgeries and treated him afterward. The defendants contend some of his expert opinions should be excluded because he relied on a premature functional capacity evaluation ("FCE") and otherwise employed an unreliable methodology. The defendants further argue Dr. Sands improperly tries to shore up his testimony by offering new opinion evidence based on a second (untimely) FCE under the guise of rebuttal. They also fault him for relying on FCEs that were performed by a physical therapist who was not disclosed as an expert witness. As the defendants see it, Dr. Sands improperly adopts the physical therapist's opinions as his own. The defendants' arguments have merit.

Dr. Sands's latest report is not rebuttal; it is an attempted do-over based on the effective admissions at his deposition that the first FCE was premature. His rebuttal report and the updated FCE are both untimely and inadmissible in these circumstances. Fuentes says the defendants' "complaints about the second FCE are surprising since Dr. Hartman (the Defendants' medical expert) agreed that the second FCE was necessary." Fuentes intentionally misses the point. The defendants do not argue the second FCE was scientifically and evidentiarily unnecessary. They persuasively argue it was untimely and an improper attempt to fix the problems created by obtaining the first FCE months before Fuentes reached maximum medical improvement and to buttress the crumbling foundation for the opinions that relied on that premature FCE.

At trial, Dr. Sands can provide background information on Fuentes's treatment and state opinions based on that treatment but only to the extent his opinions do not rely on Fuentes's flawed and untimely FCEs.

### C. Amanda Snide

The defendants next challenge the admissibility of a UP seniority roster Snide printed and Snide's opinions regarding the employment actions UP might have taken based on Fuentes's position on the roster.[1] The defendants argue the roster, Snide's testimony, and any proposed evidence that depends on either should be excluded because Snide is not qualified as an expert on the subject of her testimony and Fuentes did not timely disclose Snide as a witness. The Court agrees.

Snide was formally trained as a Certified Nursing Assistant. She worked for UP as switchman before becoming an officer for the union that represents conductors. But Fuentes has not demonstrated that Snide has any relevant education, experience, or expertise with respect to data analysis, business forecasting, or future decisions regarding hiring and firing. Fuentes also fails to provide any justification for failing to timely identify Snide as a witness or disclose this evidence before the deadline. Whether Fuentes would still be working in a position with U.P. is an issue that should have been apparent to Fuentes and his counsel throughout the case. Waiting until after other experts were cross-examined on this issue to attempt to shore up that testimony with Snide is not proper.

---

[1] The parties dispute whether Snide should be considered an expert or lay witness. It's not always easy to tell. *See*, *e.g.*, *United States v. STABL, Inc.*, 800 F.3d 476, 486 (8th Cir. 2015) ("Determining whether a witness is offering an expert or lay opinion requires a case-by-case analysis of both the witness and the witness's opinion."). But the Court easily rejects Fuentes's unfounded assertion that "Snide's testimony does not include an opinion." On the record to this point, the Court finds Snide has given expert testimony at least to the extent she opines that Fuentes would have continued working in the future had he not been injured. *See* Fed. R. Evid. 701 (prohibiting lay witnesses from offering opinion testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702").

5

Rule 702 allows some flexibility with respect to expert testimony, but it still requires "that 'the area of the witness's competence matches the subject matter of the witness's testimony.'" *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006) (quoting 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6265 (1997)). Neither Snide's self-described "access to the roster identifying the seniority level of employee [sic] and [ability to] view their work status" nor her "personal knowledge as a union official" qualify her to "provide[] information related to [Fuentes's] ability to work if he was not injured."

The Court also rejects Fuentes's assertion that the late disclosure of her information did not prejudice the defendants under the circumstances of this case. The Court is not persuaded that the defendants' opportunity to depose Snide cured any prejudice.[2] Accordingly, the Court excludes Snide's testimony, the roster, and the related testimony of the experts who rely upon her information.

D.     **Shelly Kinney**

The Court reaches a similar conclusion with respect to Kinney's opinions regarding (1) the "Usual, Customary, and Reasonable charges" ("UCR charges") for the medical services Fuentes already received and (2) Fuentes's need for physical therapy for the rest of his life. The Court agrees with Fuentes that Kinney is a "well-credentialed life-care planner" and is generally qualified to offer opinions regarding the cost of Fuentes's future medical care and treatment.

But Kinney's testimony regarding her recalculation of Fuentes's past medical expenses is based upon unreliable principles and methods and ignores the actual medical expenses documented in this case. Expert testimony must be both reliable and relevant. *See Daubert*, 509 U.S. at 597. It "should not be admitted when it is speculative, it is not

---

[2]Accepting Fuentes's position that additional depositions (or re-deposing witnesses) is a proper approach would ignore the fact that progression orders and the deadlines set forth therein exist for a reason.

supported by sufficient facts, or the facts of the case contradict or otherwise render the opinion unreasonable." *United States v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004) (per curiam). Kinney's methods for determining UCR charges are not a reliable way to address the potential issue she identifies with respect to negotiated fees. Any evidence based on those principles and methods is excluded because it unduly risks confusing the issues in this case and misleading the jury.

The problem with Kinney's opinion regarding Fuentes's future physical-therapy needs is more straightforward. Kinney herself is unqualified to render that opinion, and the Court will not permit her to rely on the opinion of a physical therapist that Fuentes did not timely designate as an expert. The Court also notes the physical therapist has not seen Fuentes for more than a year.

### E. Ronald Schmidt and Jeffrey Opp

The defendants argue the opinions from Schmidt, Fuentes's vocational rehabilitation expert, and Opp, Fuentes's economic expert, are so flawed that they should be precluded from testifying at trial. The defendants have a point but ask too much.

To be sure, the web of admissible and inadmissible evidence in this case is tangled. Schmidt's and Opp's opinions suffer many of the same flaws the Court has already discussed, and their proposed testimony—particularly with respect to lost earnings—has undoubtedly been impacted by the Court's rulings so far. Their rebuttal reports are not true rebuttal and are excluded. And their reliance on the inadmissible FCEs and other flawed evidence have left some of their other opinions on very shaky ground at best.

But at this point, the Court is unwilling to conclude that all of their opinions are so flawed as to exclude them altogether. "Doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *In re Bair Hugger*, 9 F.4th at 778 (quoting *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)). The Court is not yet convinced that all of Schmidt's and Opp's potential expert testimony is "so

fundamentally unsupported that it can offer no assistance to the jury." *Klingenberg*, 936 F.3d at 830. Fuentes retains ample avenues to prove his case to a jury, and the Court cannot predict where the evidence will lead at trial. The defendants can raise contemporaneous objections at trial as appropriate.

With respect to the defendants' more-specific in limine challenges, such as their objections to Schmidt's geographic limitations and Opp's assumptions about Fuentes's living expenses in Nebraska, the Court finds those objections go more to the weight and credibility of the challenged testimony than to its admissibility. *See, e.g., Hurst*, 882 F.2d at 311. The defendants' "redress for such weaknesses lies in cross-examination and contrary evidence rather than exclusion." *In re Bair Hugger*, 9 F.4th at 787; *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Based on the foregoing,

IT IS ORDERED:
1. Defendant MB Railway Services, LLC's motions in limine (Filing Nos. 85 and 89) are granted in part and denied in part as set forth in this Memorandum and Order.
2. Defendant Union Pacific Railroad Company's motion in limine (Filing No. 88) is granted in part and denied in part as set forth in this Memorandum and Order.
3. Any remaining evidentiary issues will be addressed at trial.

Dated this 14th day of October 2021.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge